UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| LIGAYA L. JANKOWSKI, by MICHAEL T. JANKOWSKI, under Power of Attorney,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | Case No. 2:20-cv-530 |

**DEFENDANT'S SUBMISSION IN SUPPORT OF PROPOSED SETTLEMENT**

Pursuant to this Court's Notice dated August 11, 2021, the United States provides the instant submission in support of the proposed settlement and describes the additional approval process that will be required if the Court approves the proposed settlement.

1. This is an action brought by Ligaya Jankowski, by Michael Jankowski, under power of attorney, alleging medical negligence by employees of the United States relating a fall that Ms. Jankowski suffered at Naval Medical Center Portsmouth in July 2019. Plaintiff invoked this Court's jurisdiction pursuant to 28 U.S.C. § 1346(b)(1), and the Federal Tort Claims Act, 28 U.S.C. § 2871, *et seq*.

2. Plaintiff's Complaint contains three negligence claims relating to her fall in July 2019. First, Plaintiff argued that the United States failed to have in place appropriate interventions to prevent her from falling. Second, Plaintiff argued that the United States failed to timely diagnose a brain bleed after the fall. Third, Plaintiff argued that the United States failed to prevent her from developing bedsores after Plaintiff suffered a brain bleed.

3. As a result of this alleged negligence, Plaintiff argued that she has incurred approximately $400,000 in medical costs to date and that she will incur an additional $2.7 million in medical costs over the course of her remaining life. Here, however, Plaintiff's recoverable damages are limited by Virginia's all-inclusive medical malpractice cap, *Starns v. United States*, 923 F.2d 34, 37 (4th Cir. 1991) (applying cap to actions under the FTCA), and the applicable cap on damages is $2.4 million, Va. Code § 8.01-581.15.

4. The United States has aggressively defended against Plaintiff's claims and argues that the standard of care was met by its health care providers. While the United States' expert deadline had not passed at the time the parties agreed to the proposed settlement, the United States had retained experts who were prepared to testify that the United States did not breach the standard of care at any point in its care to Plaintiff.

5. On July 12, 2021, after the parties appropriately apprised each other of their respective positions, the parties attended a settlement conference before the Honorable Magistrate Judge Lawrence R. Leonard. At the settlement conference, the parties agreed to a proposed settlement in the amount of Two Million Dollars ($2,000,000), subject to approval by this Court, final approval by the Assistant Attorney General of the Department of Justice, and other conditions specified in the Stipulation for Compromise Settlement and Release of Federal Tort Claims Act Claims Pursuant to 28 U.S.C. ☐2677 (hereinafter "Stipulation").

6. The complete and precise terms of the proposed settlement are set forth in the attached Stipulation. These terms and the amount of the proposed settlement were the product of extensive negotiations, a formal settlement conference before Magistrate Judge Leonard and multiple communications between the parties' counsel prior to the settlement conference.

7. The United States maintains that the settlement is fair and equitable to both parties. Both parties faced considerable risk if the case proceeded to trial, including, for Plaintiff, the possibility of no recovery at all or a recovery less than the settlement amount, and for the United States, the possibility of a recovery in excess of the settlement amount. In addition, a settlement at this stage of the case, allows both parties to avoid incurring additional litigation expenses, including expert fees, deposition costs, and expenses related to trial preparation.

8. If the Court approves the proposed settlement, the United States Attorney's Office will submit the proposed settlement to the Department of Justice's Torts Branch, who will then transmit the proposed settlement to the Assistant Attorney General for consideration and final approval.

9. The United States' ability and authority to compromise defensive tort cases is controlled by regulation. As relevant here, the United States Attorney may only approve settlements up to $1.0 million. 28 C.F.R. § 0.168(d)(2) & App'x to 28 C.F.R. Pt. 0, Subpt. Y (Directive No. 1-15). Settlements beyond the U.S. Attorney's authority, and up to $4 million, require the approval of an Assistant Attorney General ("AAG"). 28 C.F.R. § 0.160(a)(3).

10. The process by which a United States Attorney's Office seeks authority to settle a case beyond the authority of the U.S. Attorney is described in the Department of Justice's Justice Manual. *See* JM 4-5.230. Pursuant to the Justice Manual, for cases such as the instant one in which a settlement would exceed $1.0 million, the United States Attorney's Office engages in consultation with the Torts Branch prior to engaging in settlement discussions and receives appropriate guidance and recommendations from the Torts Branch as to the amount and terms of the settlement. If the parties reach a proposed settlement agreement, after that agreement has received full approval by the plaintiffs, including court approval where necessary, the United

States Attorney's Office submits a request for formal approval of the proposed settlement agreement, and for authorization to execute the proposed settlement on behalf of the United States.

11. Here, the undersigned attorneys consulted with the Torts Branch in advance of agreeing to the proposed settlement, and if the Court approves the proposed settlement, the United States Attorney's Office will submit the proposed settlement with Plaintiff's signature to the Torts Branch and will request final authorization from the Assistant Attorney General to execute the proposed settlement. Once final authorization to execute the proposed settlement has been received, the undersigned attorneys will sign the settlement agreement. After the proposed settlement is signed by both parties, the parties will notify the Court and will submit a final order for the Court to enter.[1]

        Respectfully submitted,

        RAJ PAREKH
        Acting United States Attorney

By:    /s/
      Sean D. Jansen, Assistant U.S. Attorney
      Virginia State Bar No. 82252
      Kent P. Porter
      Virginia State Bar No. 22853
      Counsel for the Defendant
      Office of the United States Attorney
      101 West Main Street, Suite 8000
      Norfolk, VA 23510-1671
      Phone: (757) 441-6331
      Fax: (757) 441-6689
      Email: sean.jansen@usdoj.gov
      Email: kent.porter@usdoj.gov

---

[1] The Court's August 11, 2019 Notice states, "A joint proposed Final Order must be submitted as well." For the reasons explained herein, by regulation, the United States may only submit such a proposed final order after it receives authorization from the Assistant Attorney General to execute the proposed settlement.